# In The
# United States Court of Appeals
# For The Eleventh Circuit

TALENTSCALE, INC.

*Plaintiff/Appellant,*

v.

AERY AVIATION, LLC, et al.

*Defendants/Appellees.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 5:25-MC-00001-TKW-MJF

————

**INITIAL BRIEF OF THE APPELLANT**

————

Kenneth E. Chase
CHASE LAW & ASSOCIATES, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: (305) 402-9800
kchase@chaselaw.com

*Counsel for Appellant Talentscale, Inc.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ...........................................................................iv

REQUEST FOR ORAL ARGUMENT ................................................... vii

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF THE ISSUES....................................................................2

STATEMENT OF THE CASE.......................................................................3

      A.     The Judgment and the Cleveland Clinic Garnishment ....................3

      B.     Cogent's Loan, Security Interest, the "Blocked Account" ..............4

      C.     The Motions to Dissolve and the Compressed Schedule................6

      D.     The May 23, 2025 Telephonic Conference.....................................8

      E.     Post-Hearing Disclosures and the Rule 59(E)/60(B) Motion ........11

SUMMARY OF THE ARGUMENT .....................................................14

STANDARDS OF REVIEW .........................................................................18

ARGUMENT .................................................................................................19

I.     THE DISTRICT COURT VIOLATED DUE PROCESS AND FLORIDA'S GARNISHMENT STATUTES BY DISSOLVING THE WRIT AT AN UNNOTICED MERITS HEARING WITHOUT AN EVIDENTIARY RECORD ..................................................................19

      A.     Due Process Required Notice that the Merits Would be Adjudicated and a Meaningful Chance to Prepare ........................19

      B.     Florida Statutes §§ 77.07 and 77.16 Required an Evidentiary Hearing and Jury Trial that Never Occurred.................................23

C.     *Charlotte Development Partners* is Distinguishable ....................27

D.     The Trial Court Relied on an Outdated Statutory Interpretation ........................................................................28

E.     Cases Permitting Summary Disposition Are Inapposite Due to Fundamental Procedural Differences..........................................30

II.   COGENT DID NOT MEET § 77.16'S OWNERSHIP REQUIREMENT AND CANNOT RELY ON A BLOCKED ACCOUNT OR SECURITY INTEREST AS A SUBSTITUTE..................32

A.     Cogent's Affidavits Admit the Debt is Owed to Aery, Not Cogent ...................................................................................32

B.     A Blocked Account and Control Over Proceeds are Not an "Assignment" of the Receivable ......................................................34

C.     The Court Compounded the Error by Relying on Unsworn Argument to Resolve Disputed Facts..........................................37

III.   THE COURT MISAPPLIED SECURED TRANSACTIONS LAW, IGNORED § 679.323(2), AND ABUSED ITS DISCRETION IN DENYING RULE 59(E)/60(B) RELIEF ........................................39

A.     A Perfected Security Interest Does Not Automatically Defeat a Judgment Lien Absent Default and Enforcement ........................39

B.     The Court Ignored § 679.323(2) and Cogent's $6.3 Million in Post-Lien Advances ........................................................40

C.     The Denial of Rule 59(E)/60(B) Relief Was an Abuse of Discretion ........................................................................43

CONCLUSION ........................................................................45

CERTIFICATE OF COMPLIANCE ................................................46

CERTIFICATE OF SERVICE .......................................................46

**Cases**                                                                                              **Page(s)**

*Am. Alt. Ins. Corp. v. S. Fla. Glazing, Inc.,*
    904 So. 2d 656 (Fla. 4th DCA 2005)......................................................34

*Am. Home Assur. Co. v. Weaver Aggregate Transport, Inc.,*
    84 F. Supp. 3d 1314 (M.D. Fla. 2015) ..........................................39

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).............................................................................22

*Armstrong v. Manzo,*
    380 U.S. 545 (1965)......................................................................20, 23

*Arnold, Matheny and Eagan, P.A. v. First Am. Holdings, Inc.,*
    982 So.2d 628, 632 (Fla. 2008) ......................................................18

*Arthur v. King,*
    500 F.3d 1335 (11th Cir. 2007) ......................................................18

*Bender v. Shatz, LLC,*
    300 So. 3d 193, 197 (Fla. 4th DCA 2020)......................................34

*Charlotte Development Partners, LLC v. Tricom Pictures
& Productions, Inc.,*
    33 So. 3d 690 (Fla. 4th DCA 2009)........................................... 27-28

*Dick Warner Cargo Handling Corp. v. Aetna Bus. Credit, Inc.,*
    700 F.2d 858 (2d Cir. 1983) ......................................................35, 39

*Frierson v. United Farm Agency, Inc.,*
    868 F.2d 302 (8th Cir. 1989) ..........................................................41

*Fuentes v. Shevin,*
    407 U.S. 67 (1972).................................................................... 18-19

*Gigliotti Contracting N., Inc. v. Traffic Control Prods. of N. Fla., Inc.,*
    788 So. 2d 1013 (Fla. 2d DCA 2001)........................................18, 32

*Giles v. Sun Bank, N.A.*,
450 So. 2d 258, 260 (Fla. 5th DCA 1984)......................................................35

*Green v. Williams,*
78 So. 3d 555 (Fla. 5th DCA 2011).................................................24, 26, 38

*Harborside Suites, LLC v. Rosen,*
261 So. 3d 664 (Fla. 3d DCA 2018)............................................................24

*Health Application Sys., Inc. v. Hartford Life & Accident Ins. Co.,*
381 So. 2d 294 (Fla. 1st DCA 1980) ...........................................................36

*Henry Lee Co. v. Tolz,*
157 F.3d 1290 (11th Cir. 1998 ....................................................................41

*Highland Consulting Grp., Inc. v. Soule,*
No. 9:19-cv-81636, 2022 U.S. Dist. LEXIS 221566
(S.D. Fla. Dec. 7, 2022) ...............................................................................31

*In re Armando Gerstel,*
65 B.R. 603 (Bankr. S.D. Fla. 1986) ...........................................................36

*In re Global Energies, LLC*,
763 F.3d 1341, 1347 (11th Cir. 2014) .........................................................44

*Kemp v. United States,*
596 U.S. 528 (2022)......................................................................... 18-19, 43

*Leon Shaffer Golnick Advert., Inc. v. Cedar,*
423 So. 2d 1015, 1017 (Fla. 4th DCA 1982).................................................37

*Major League Baseball v. Morsani,*
790 So. 2d 1071 (Fla. 2001) ........................................................................26

*Mathews v. Eldridge,*
424 U.S. 319 (1976)................................................................................18, 22

*Merriman Invs., LLC v. Ujowundu,*
123 So. 3d 1191, 1194 (Fla. 3d DCA 2013)............................................18, 24

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
     339 U.S. 306 (1950)................................................................19

*Navy Fed. Credit Union v. Camden Summit P'ship, L.P.,*
     406 So. 3d 964 (Fla. 4th DCA 2025)..........................................23, 28

*Navon, Kopelman & O'Donnell, P.A. v. Synnex Info. Tech., Inc.,*
     720 So. 2d 1167, 1168 (Fla. 4th DCA 1998)...................................33

*Oper v. Air Control Prods., Inc.,*
     174 So. 2d 561 (Fla. 3d DCA 1965)..........................................28, 30

*Physicians Care Ctrs. of Fla., LLC v. PNC Bank, N.A.,*
     345 So. 3d 907 (Fla. 4th DCA 2022)............................................30

*Reese v. Ellis, Painter, Ratterree & Adams, LLP,*
     678 F.3d 1211 (11th Cir. 2012) ...................................................33

*RPS, Inc. v. Travel Max Int'l, Inc.*
     823 So. 2d 243 (Fla. 4th DCA 2002)............................................25

*Saint-Vil v. Perimeter Mortg. Funding Corp.*
     206 So. 3d 7 (Fla. 4th DCA 2016)........................................... 20-21

*Schneider v. Tirikian,*
     397 So. 3d 1070 (Fla. 3d DCA 2024)............................................20

*Tempur-Pedic N. Am., Inc. v. SOS Furniture Co.,*
     No. 20-mc-22441, 2021 U.S. Dist. LEXIS 44422
     (S.D. Fla. Mar. 8, 2021)............................................................30

*Tortuga Marine Salvage Co. v. Hartford Accident & Indem. Co.,*
     171 So. 2d 54 (Fla. 3d DCA 1965)................................... 28-31, 36

*WReal, LLC v. Amazon.com, Inc.,*
     840 F.3d 1244 (11th Cir. 2016) ................................................ 18-19

**Statutes and Rules**                                                **Page(s)**

28 U.S.C. § 1291 ................................................................................1

Fed. R. Civ. P. 59(e)................................. 1, 3, 11-12, 17-18, 39, 43-45

Fed. R. Civ. P. 60(b) ................................ 1, 3, 11-12, 17-19, 39, 43-45

Fed. R. Civ. P. 69(a)...........................................................................1

Fla. Stat. § 77.07 .....................................................................*passim*

Fla. Stat. § 77.16 .....................................................................*passim*

Fla. Stat. § 77.081 ............................................................................1

Fla. Stat. § 679.323 ........................................................ 3, 13, 17, 39-43

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiff-Appellant Talentscale Inc. respectfully believes that oral argument would be helpful in assisting the Court in this appeal which involves due process principles, Florida's garnishment procedures, and the application of Florida Statutes §§ 77.07, 77.16, and 679.323(2) to a disputed priority contest between a judgment creditor and a secured lender.

# JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this post-judgment garnishment proceeding under Federal Rule of Civil Procedure 69(a) and 28 U.S.C. § 1331. Rule 69(a) authorizes a federal judgment to "be enforced by a writ of execution" or garnishment "in accordance with the procedure of the state where the court is located," and Talentscale's underlying $1,142,467.20 judgment against Aery Aviation, LLC was entered and registered in the Northern District of Florida.

This Court has jurisdiction under 28 U.S.C. § 1291 because the orders on appeal are final decisions that terminated the garnishment proceeding. On May 23, 2025, the district court entered an order denying Talentscale's motion for extension of time, granting Aery's and Cogent Bank's motions to dissolve the writ of garnishment issued to The Cleveland Clinic Foundation, and directing the release of the garnished funds, $921,471.42, held for Aery. On July 1, 2025, the court denied Talentscale's timely motion for relief under Rules 59(e) and 60(b), leaving nothing further to adjudicate in the Cleveland Clinic garnishment. Talentscale filed a timely notice of appeal from those final orders on July 31, 2025.

An order dissolving a writ of garnishment and discharging the garnishee is treated as a final judgment in the garnishment action because it conclusively resolves entitlement to the garnished property. See Fla. Stat. § 77.081 (directing entry of judgment in garnishment proceedings). Accordingly, appellate jurisdiction is proper.

1

# STATEMENT OF THE ISSUES

1.  Whether the district court violated Talentscale's due process and statutory rights by dissolving a $921,471.42 writ of garnishment at a telephonic conference noticed the prior afternoon only for Talentscale's motion for extension of time, without holding the evidentiary hearing required by Florida Statutes § 77.07(1), without empaneling the jury required by § 77.16(1), and while Talentscale's motion to compel critical discovery remained pending.

2.  Whether Cogent Bank failed, as a matter of Florida garnishment law, to meet its burden under Florida Statutes § 77.16(1), where: (a) Cogent's affidavits expressly admitted that "the Cleveland Clinic receivables are amounts that the Cleveland Clinic owes Aery"; (b) Cleveland Clinic's answers likewise identified the debt as owed to Aery and not to Cogent; and (c) the district court resolved disputed issues of ownership and default based solely on unsworn attorney argument, including statements later disproved by Cogent's own ledgers.

3.  Whether the district court erred in holding that Cogent's security interest and a supposed "assignment" categorically entitled Cogent to priority over Talentscale's judgment lien, where: (a) Cogent never declared Aery in default or took any enforcement action; (b) no party ever alleged an assignment, the loan record contains none, and the Cleveland Clinic invoices direct payment to Aery; and (c)

2

Cogent's over $6.3 million in post-garnishment advances, made with actual notice of Talentscale's lien, are subordinate under Florida Statutes § 679.323(2).

4.      Whether the district court abused its discretion in denying Talentscale's motion for relief under Rules 59(e) and 60(b), where newly produced loan ledgers and Blocked Account records, belatedly provided five days after the dissolution order, conclusively refuted Cogent's unsworn assertion that Aery was "30 days past due" and had not made its March payment, and exposed that the dissolution ruling rested on both legal error and a materially false factual underpinning.

**<u>STATEMENT OF THE CASE</u>**

**A. The Judgment and the Cleveland Clinic Garnishment**

Talentscale, Inc. obtained a $1,142,467.20 federal judgment against Aery Aviation, LLC in October 2024 in the Eastern District of Virginia for unpaid staffing services. (Doc. 93, at 4; Doc. 82, at 2–3). Aery has not paid that judgment. (Doc. 93, at 4; Doc. 78, at 2). In January 2025, Talentscale registered the judgment in the Northern District of Florida and began post-judgment enforcement efforts, including garnishment proceedings directed at Aery's banking relationships and major customers. (Doc. 93, at 4–5; Doc. 78, at 2–3; Doc. 82, at 2–3).

On March 27, 2025, after learning that The Cleveland Clinic Foundation regularly paid Aery hundreds of thousands of dollars for air-ambulance services, Talentscale moved for a writ of garnishment directed to Cleveland Clinic. (Doc. 78,

at 2–3; Doc. 93, at 4–5). The Clerk issued the writ on March 28, 2025, and Cleveland Clinic was served on March 31, 2025, making Talentscale a lien creditor under Florida law as of that service date. (Doc. 59, at 1–2; Doc. 78, at 2–3; Doc. 93, at 4–5).

Cleveland Clinic's April 24, 2025 answer admitted that it was indebted to Aery in the amount of $126,434.97 and did not identify any interest held by Cogent Bank. (Doc. 59, at 1–2; Doc. 93, at 5). On May 15, 2025, Cleveland Clinic filed an amended answer increasing the disclosed indebtedness to $921,471.42, still identifying the debt as owed to Aery, not to Cogent. (Doc. 73, at 1–2; Doc. 88, Joint Rpt., at 2). This $921,471.42 receivable represented approximately 81% of Talentscale's unpaid $1,142,467.20 judgment. (Doc. 59, at 2; Doc. 73, at 2; Doc. 93, at 4).

**B. Cogent's Loan, Security Interest, and the "Blocked Account"**

Cogent Bank is Aery's senior secured lender. (Doc. 65, at 2–3; Doc. 77, at 2–4). In 2021, Cogent extended Aery a revolving line of credit initially up to $9 million, later expanded to $15 million and, in May 2025, to $18 million. (Doc. 77, at 2–5; Doc. 93, at 6–7). As part of that facility, Aery granted Cogent a security interest in its accounts receivable and entered into a "Blocked Account Agreement" under which certain customer payments were to be routed through a blocked account at Cogent for Aery's benefit. (Doc. 77, at 3–6; Doc. 73, at 3–4).

Cleveland Clinic, however, was never a party to the Blocked Account Agreement, never agreed to pay Cogent, and was never told that Cogent, rather than Aery, owned its payables. (Doc. 77, at 3–6; Doc. 73, at 3–5; Doc. 59, at 1–2). Cleveland Clinic's invoices and correspondence show that it treated Aery as the creditor and that the payment instructions identified Aery (or an Aery-controlled bank account at Cogent) as the payee, not Cogent as assignee. (Doc. 73, at 3–6; Doc. 77, at 3–6).

Cogent's May 14 and May 21, 2025 affidavits confirm that understanding; they repeatedly refer to the "Cleveland Clinic Receivables" as "amounts that the Cleveland Clinic owes Aery." (Doc. 77, at 2–4; Doc. 73, at 3–4; Doc. 105, at 3–4).

Before the May 23, 2025 hearing, Cogent had not declared Aery in default under the loan documents. (Doc. 93, at 11–13; Doc. 105, at 3–5). Cogent's counsel admitted as much on the record, acknowledging that although Aery was not maintaining a $500,000 balance in the blocked account, Cogent had not notified Aery that it was in breach and had taken no formal enforcement action. (Doc. 93, at 11–13; Doc. 105, at 3–5). Aery's March 2025 loan statement showed only $176,232.18 due, and Aery in fact paid Cogent over $3.1 million during that month alone. (Doc. 93, at 12–13; Doc. 105, at 4–5).

On May 5, 2025, after Talentscale's garnishment lien had attached and after Cogent had actual notice of the writ, Cogent and Aery executed an Amended and

Restated Business Loan Agreement and a new $18,000,000 Renewal Revolving Line of Credit Promissory Note. (Doc. 77, at 2–5; Doc. 93, at 13–14). That amendment materially expanded Aery's borrowing capacity by $3 million and reset key loan terms, but Cogent did not disclose that expansion to the district court at the May 23, 2025 hearing. (Doc. 77, at 2–5; Doc. 93, at 13–14; Doc. 105, at 3–6). Cogent's internal records later revealed that, between March 31 and May 21, 2025, Cogent advanced Aery $6,336,853.46 in new credit, more than five times the judgment Talentscale seeks to collect. (Doc. 93, at 14–15; Doc. 88, Joint Rpt., at 2–3).

**C. The Motions to Dissolve and the Compressed Schedule**

On May 14, 2025, Cogent filed a "Motion to Dissolve Writ of Garnishment" under Florida Statutes § 77.16, asserting a prior perfected security interest in Aery's receivables, including the Cleveland Clinic account. (Doc. 65, at 1–3; Doc. 77, at 1–4). Cogent supported its motion with an affidavit from a bank officer describing the Blocked Account arrangement and asserting that the Cleveland Clinic receivables were subject to Cogent's collateral package, while still acknowledging that Cleveland Clinic owed the money to Aery. (Doc. 77, at 2–6; Doc. 105, at 3–4). That same day, Aery filed its own motion to dissolve under § 77.07, adopting Cogent's position that Cogent's security interest defeated Talentscale's judgment lien. (Doc. 68, at 1–4; Doc. 93, at 8–9).

The next day, May 15, 2025, the district court sua sponte shortened Talentscale's time to respond to those motions. (Doc. 71, at 1; Doc. 93, at 9–10). Rather than allowing the usual 14-day response period under Local Rule 7.1(E), the court ordered Talentscale to respond within seven days, by May 21. (Doc. 71, at 1; Doc. 93, at 9–10). The court gave no accompanying explanation for this compressed schedule. (Doc. 71, at 1; Doc. 93, at 9–10).

On May 21, 2025, the very day Talentscale's response was due, Cogent filed a "Supplement to Motion to Dissolve the Writ of Garnishment," attaching a second affidavit and 154 pages of additional Aery invoices to Cleveland Clinic. (Doc. 77, at 1–3; Doc. 73, at 1–4). The supplement supplied the second affidavit that § 77.16 contemplates for third-party claimants and substantially enlarged Cogent's evidentiary presentation, but it still did not disclose Aery's recent payment history, any declared default, or the post-lien $6.3 million in advances. (Doc. 73, at 3–6; Doc. 93, at 10–12).

That same day, Talentscale moved for a short extension of time, explaining that Cogent had not yet produced key subpoenaed loan records, particularly amortization schedules, transaction ledgers, and blocked-account statements, needed to test Cogent's claims of default, priority, and ownership. (Doc. 78, at 2–4; Doc. 93, at 10–11). On May 22, Talentscale filed a motion to compel Cogent to produce those

7

records, which remained outstanding despite repeated meet-and-confer efforts. (Doc. 82, at 2–4; Doc. 88, Joint Rpt., at 2–3).

Late in the afternoon on May 22, the court entered a "Notice of Hearing" setting a telephonic conference for 10:00 a.m. the next morning, May 23. (Doc. 71, at 1). The notice identified a single subject, "Plaintiff's Motion for Extension of Time (Doc. 78)," and did not advise that the court would adjudicate the merits of Cogent's and Aery's motions to dissolve, hold any evidentiary hearing, or take up Talentscale's motion to compel. (Doc. 71, at 1; Doc. 93, at 10–11).

**D. The May 23, 2025 Telephonic Conference**

On the evening of May 22, 2025, at 8:47 p.m., after Talentscale had already moved for an extension and on the eve of the hearing, Cogent's counsel emailed Talentscale a spreadsheet purporting to summarize payments and balances under the loans. (Doc. 93, at 11–12; Doc. 105, at 4–5). Counsel acknowledged that the format was "likely in a form [Talentscale] was not used to seeing with an ordinary loan," and Talentscale's counsel did not have a meaningful opportunity to analyze the data before the 10:00 a.m. hearing. (Doc. 93, at 11–12; Doc. 105, at 4–5). Cogent still did not produce the underlying ledgers, amortization tables, or Blocked Account statements before the conference. (Doc. 93, at 11–13; Doc. 82, at 2–4).

The May 23 hearing was held by telephone. (Doc. 93, at 15; Doc. 84, at 2). The judge called the case and confirmed appearances for Talentscale, Aery, Cogent,

Cleveland Clinic, and other garnishees. (Doc. 93, at 15–16). He then described the nature of the proceeding—stating that "what we're primarily here on, I guess, is the Request for Extension of Time to Respond to the Motions to…Dissolve"—and invited argument focused on whether Talentscale needed more time and discovery to respond to Cogent's and Aery's dissolution motions. (Doc. 93, at 16–17; Doc. 104, at 2–4).

Talentscale explained that it lacked critical information: Cogent had resisted producing loan records and blocked-account data; the May 21 supplement added a new affidavit and voluminous exhibits on the very day Talentscale's response was due; and Talentscale's motion to compel targeted precisely the records needed to determine whether Aery was in default and whether Cogent had any present right to the Cleveland Clinic receivable. (Doc. 73, at 1–4; Doc. 78, at 2–4; Doc. 82, at 2–4; Doc. 93, at 16–18). Talentscale asked for a brief extension pursuant to an evidentiary process consistent with Florida's garnishment statute—specifically, an evidentiary hearing under § 77.07 and a jury trial on Cogent's third-party claim under § 77.16. (Doc. 78, at 2–4; Doc. 93, at 16–18; Doc. 104, at 3–5).

No witnesses were sworn at the hearing. (Doc. 93, at 16–18; Doc. 84, at 2–3). No exhibits were marked or admitted. (Doc. 93, at 16–18; Doc. 104, at 3–5). Instead, the court invited Cogent's counsel to respond, and she made a series of unsworn factual representations about Aery's supposed default and payment history. (Doc. 93,

9

at 16–18; Doc. 105, at 3–5). She told the court that, "as of April, 2025, Aery was 30 days past due on their loan payments for all three of the facilities," and that she was "guessing that March payment has not been made." (Doc. 93, at 17; Doc. 105, at 4–5). She also asserted that the revolving line of credit was fully drawn at approximately $15 million at the time, failing to disclose to the tribunal that the credit facility had been expanded to $18 million two weeks before the hearing. (Doc. 93, at 17–18; Doc. 105, at 4–5).

The judge accepted those unsworn representations as true and significant. (Doc. 93, at 17–18; Doc. 106, at 2–3). He stated on the record: "I understand that and accept that, and particularly if the representation is accurate that they're 30 days behind on their loan agreements, that may be…coming sooner rather than later because I'm sure Cogent Bank doesn't like having a $15 million liability sitting out there with it not being paid." (Doc. 93, at 17; Doc. 105, at 4–5). The court expressed skepticism that additional discovery would change "what appears to be an undisputed fact" that Aery owed Cogent more than Cleveland Clinic owed Aery, and questioned why Talentscale needed more time. (Doc. 93, at 17–18; Doc. 106, at 2–3).

Talentscale reiterated that it was not contesting Cogent's status as a secured creditor, but it had not had the opportunity to test whether Aery was actually in default, whether Cogent had a present ownership interest in the specific Cleveland

Clinic receivable, and how post-garnishment advances affected priority under Florida's Uniform Commercial Code. (Doc. 93, at 17–19; Doc. 104, at 3–5). Talentscale explained that without the promised loan records and blocked-account statements, it could not meaningfully address those issues and could not fairly be held to have waived its statutory rights to a hearing and jury trial. (Doc. 78, at 2–4; Doc. 82, at 2–4; Doc. 93, at 17–19).

At the close of the roughly hour-long conference, the court denied Talentscale's motion for extension, granted Aery's and Cogent's motions to dissolve the writ, and orally ruled that the Cleveland Clinic funds were effectively Cogent's property by virtue of an "assignment." (Doc. 93, at 18–20; Doc. 84, at 2–3). The court did so without holding an evidentiary hearing, without empaneling a jury, and without addressing Talentscale's pending motion to compel. (Doc. 84, at 2–3; Doc. 93, at 18–20). The subsequent written order dissolved the writ, directed Cleveland Clinic to release the $921,471.42, and discharged the garnishee. (Doc. 84, at 1–3; Doc. 88, Joint Rpt., at 2–3).

**E. Post-Hearing Disclosures and the Rule 59(E)/60(B) Motion**

Only after the writ was dissolved did Cogent finally produce the records that Talentscale had been seeking. (Doc. 93, at 20–21; Doc. 105, at 5–6). On May 28 and 29, 2025, five days after the hearing, Cogent produced detailed loan ledgers, amortization tables, and Blocked Account statements. (Doc. 93, at 20–21; Doc. 105,

at 5–6). Those records showed that, contrary to Cogent's counsel's unsworn assertion, Aery had not gone a month without paying Cogent; rather, in March and April 2025, Aery paid Cogent $5,923,136.08 over 42 separate transfers, including more than $3 million in principal payments in March alone. (Doc. 93, at 21–22; Doc. 105, at 5–6).

The newly produced records also confirmed that between March 31, 2025 (when the garnishment lien arose) and May 21, 2025 (when Cogent filed its supplement), Cogent advanced Aery $6,336,853.46 in new credit while having actual notice of Talentscale's lien. (Doc. 93, at 21–22; Doc. 88, Joint Rpt., at 2–3). Cogent and Aery simultaneously executed amendments increasing the revolving credit limit from $15 million to $18 million, enabling those post-lien advances. (Doc. 77, at 2–5; Doc. 93, at 21–22). None of these facts had been disclosed or subjected to adversarial testing at the May 23 hearing. (Doc. 93, at 20–22; Doc. 104, at 4–6).

On June 11, 2025, Talentscale moved under Rules 59(e) and 60(b) for relief from the May 23 order. (Doc. 93, at 1–2, 20–23). Talentscale's motion and supporting declarations catalogued three independent grounds for relief: (1) the lack of notice and the failure to hold the evidentiary hearing and jury trial mandated by Florida Statutes §§ 77.07 and 77.16; (2) the legal insufficiency of Cogent's § 77.16 affidavits, which admitted that Cleveland Clinic owed Aery, not Cogent, and relied on a blocked-account arrangement that did not amount to an assignment; and (3) the

newly discovered loan ledgers and Blocked Account statements, which disproved Cogent counsel's unsworn claims of delinquency and revealed that Cogent had made more than $6.3 million in post-lien advances subordinate under § 679.323(2). (Doc. 93, at 20–23).

Cogent and Aery opposed the motion, arguing among other things that Talentscale had waived its rights by not demanding a jury or evidentiary hearing during the May 23 conference and that any error was harmless because Cogent's purported ownership was "undisputed." (Doc. 104, at 2–6; Doc. 105, at 2–6). On July 1, 2025, the district court denied relief in a brief order, concluding that "none of the points raised by Plaintiff in its motion undermine the dispositive (and still-undisputed) fact that the garnished funds were assigned to Cogent Bank," and that any procedural defects had been cured by the opportunity to speak at the telephonic hearing. (Doc. 106, at 1–3). The court never reconciled its reliance on Cogent's unsworn assertions with the subsequently produced ledgers, did not analyze § 679.323(2), and did not explain how an "assignment" could be "dispositive" when no party had alleged one and the record contained none. (Doc. 93, at 21–23; Doc. 106, at 2–3).

Talentscale timely appealed. (Doc. 112).

## SUMMARY OF THE ARGUMENT

The district court dissolved a $921,471.42 writ of garnishment, a ready source for 81% of Talentscale's unpaid federal judgment, at what was noticed as a scheduling call on Talentscale's motion for a brief extension of time. The notice said nothing about adjudicating the merits of Aery's and Cogent's motions to dissolve. Talentscale appeared expecting to argue only for time to obtain promised discovery, including Cogent's loan ledgers and Blocked Account statements. Instead, without witnesses, exhibits, or advance warning, the court denied the extension, dissolved the writ, and ordered release of the funds. Due process and Florida's garnishment statutes require more than an ambush merits ruling in a non-evidentiary telephonic conference noticed on the afternoon before a hearing the next morning.

Florida Statutes § 77.07(1) mandates that a motion to dissolve a writ "shall" be set for an "immediate hearing," and § 77.16(1) mandates that, when a third party like Cogent claims the garnished property, "the court shall impanel a jury" to determine ownership unless waived. Talentscale received neither the evidentiary hearing § 77.07 requires nor the jury § 77.16 guarantees. No witnesses were sworn, no documents were admitted, and Talentscale was never told the conference would decide whether it permanently lost its lien on nearly a million dollars in receivables. A party cannot intentionally waive hearing and jury rights at a proceeding it was

14

never told would reach the merits, and Florida courts treat the deprivation of notice and an opportunity to be heard as fundamental error.

Even setting procedure aside, Cogent did not satisfy § 77.16 at the threshold. To dissolve the writ, a third-party claimant must swear that "the debt due by a garnishee is due to that person and not to the defendant." Cogent's affidavits did the opposite: they described the "Cleveland Clinic Receivables" as "amounts that the Cleveland Clinic owes Aery," and Cleveland Clinic's answers likewise identified the indebtedness as owed to Aery, not Cogent. Cogent's internal "Blocked Account" arrangement with Aery may have given Cogent collateral and control over cashflow, but it did not transform Cleveland Clinic's obligation into Cogent's property or satisfy the statute's ownership requirement. The court nevertheless credited Cogent as the owner based not on sworn evidence but on unsworn argument, including a representation that Aery had gone a month without making required payments.

The substantive legal errors run deeper. A perfected security interest, even in all of a borrower's receivables, is not ownership, and it does not automatically outrank a judicial lien in all circumstances. Florida law requires a secured creditor who wants to defeat a judgment creditor to show a present right to the specific property, usually by establishing default and some act of enforcement. Cogent never declared Aery in default, never sent a notice of default, and admitted at the hearing that it had not told Aery it was in breach. No party pled or proved any assignment of

15

the Cleveland Clinic debt to Cogent. The word "assignment" appears as a label only in the court's order, unmoored from the record. The invoices to Cleveland Clinic direct payment to Aery, Cleveland Clinic's answers identify Aery as creditor, and Cogent's affidavits confirm that understanding. The district court's categorical pronouncement that the funds had been "assigned" to Cogent rests on a theory no party advanced and that the documents do not support.

The record developed after the rushed May 23 ruling underscores how badly the process went off course. Five days after the telephonic conference, while Talentscale's motion to compel remained unresolved, Cogent finally produced loan ledgers showing that, in March and April 2025, Aery paid Cogent $5,923,136.08 across 42 separate transfers, including more than $3 million in March alone. Those same records show that between March 31 and May 21, 2025, the very period when Talentscale's garnishment lien was in place and Cogent had actual notice of it, Cogent advanced Aery $6,336,853.46 in new credit and expanded Aery's line from $15 million to $18 million. None of that was disclosed to the court when Cogent's counsel, without being sworn, told the judge that Aery was "30 days past due on their loan payments for all three of the facilities" and that she was "guessing that March payment has not been made." The judge expressly accepted that representation as true and relied on it in deciding that Cogent's interest should prevail.

16

Under Rules 59(e) and 60(b), those later-produced documents matter. They are quintessential newly discovered evidence: Talentscale diligently sought them via subpoena and motion practice, Cogent withheld them until after the dissolution ruling, and they directly contradict the factual premise on which the court acted. They also expose an independent statutory error. Florida Statutes § 679.323(2) subordinates a secured creditor's interest to a lien creditor's rights to the extent the secured creditor makes post-lien advances more than 45 days after the lien, with knowledge of the lien, and not under a prior binding commitment. Cogent's more than $6.3 million in post-garnishment advances, far exceeding Talentscale's $1.14 million judgment, fall squarely within that rule, yet the court granted Cogent blanket priority without any § 679.323(2) analysis.

This appeal is not simply about who ultimately gets the Cleveland Clinic funds. It is about whether a judgment creditor can lose 81% of a federal judgment at an unannounced merits hearing, without an evidentiary record, based on unsworn assertions later proven wrong, and under a legal regime that treats a blocked account as ownership and ignores statutory limits on post-lien advances. The Due Process Clause, Florida's garnishment statutes, and the Federal Rules do not permit that result. The Court should reverse the orders dissolving the writ and denying post-judgment relief, and remand with instructions to (1) restore the writ, (2) hold the

evidentiary hearing § 77.07 requires on Aery's motion, and (3) impanel the jury § 77.16 mandates to decide Cogent's third-party claim.

<u>**STANDARDS OF REVIEW**</u>

Whether a party received constitutionally adequate notice and an opportunity to be heard is reviewed de novo. See *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Whether the district court complied with Florida's garnishment procedures and correctly interpreted Florida Statutes §§ 77.07 and 77.16 is also reviewed de novo. See *Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc.*, 982 So. 2d 628, 632 (Fla. 2008).

The Court reviews de novo the legal sufficiency of Cogent's affidavits and the district court's determination that Cogent owned the garnished receivable or was entitled to priority as a matter of law. See *Merriman Invs., LLC v. Ujowundu*, 123 So. 3d 1191, 1193–94 (Fla. 3d DCA 2013); *Gigliotti Contracting N., Inc. v. Traffic Control Prods. of N. Fla., Inc.*, 788 So. 2d 1013, 1016 (Fla. 2d DCA 2001).

The denial of relief under Rules 59(e) and 60(b) is reviewed for abuse of discretion. *Kemp v. United States*, 596 U.S. 528, 537 (2022); *Arthur v. King*, 500 F.3d 1335, 1341 (11th Cir. 2007). A district court abuses its discretion when it applies the wrong legal standard, employs improper procedures, relies on clearly erroneous findings of fact, or reaches a decision that is plainly unreasonable in light of the record. See *WReal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

Where a judgment is infected by a due process violation or a mistake of law within the meaning of Rule 60(b)(1), refusal to grant relief constitutes an abuse of discretion. See *Kemp*, 596 U.S. at 534.

## ARGUMENT

**I.  THE DISTRICT COURT VIOLATED DUE PROCESS AND FLORIDA'S GARNISHMENT STATUTES BY DISSOLVING THE WRIT AT AN UNNOTICED MERITS HEARING WITHOUT AN EVIDENTIARY RECORD.**

The district court dissolved a nearly million-dollar writ of garnishment at a telephonic conference noticed only for Talentscale's motion for extension of time, without holding the evidentiary hearing and jury trial Florida law requires and while Talentscale's motion to compel critical discovery remained pending. That procedure violated the Due Process Clause and the text of Florida Statutes §§ 77.07 and 77.16.

### A. Due Process Required Notice that the Merits Would be Adjudicated and a Meaningful Chance to Prepare.

Due process "requires notice and an opportunity for hearing appropriate to the nature of the case" before a court may deprive a party of a significant property interest. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950); see *Fuentes*, 407 U.S. at 80. Notice must be "of such nature as reasonably to convey the required information" and must "afford a reasonable time for those interested to make their appearance." *Mullane*, 339 U.S. at 314. The United States Supreme Court likewise holds that the Constitution requires "notice reasonably calculated, under all

19

the circumstances, to apprise interested parties of the pendency of the action" and an opportunity to be heard "at a meaningful time and in a meaningful manner" before property is taken. *Armstrong v. Manzo*, 380 U.S. 545, 550–52 (1965).

Here, the only notice Talentscale received for the May 23 hearing was a one-page docket entry setting "a telephonic non-evidentiary hearing" on "Plaintiff's motion for extension of time (Doc. 78)" for the next morning. The notice did not mention Cogent's or Aery's motions to dissolve, did not state that the merits of those motions would be decided, and did not suggest that the court might dissolve the writ and release the $921,471.42 Cleveland Clinic owed Aery. Talentscale appeared expecting to argue for a brief extension to obtain overdue discovery. Instead, it lost 81% of its judgment at what was supposed to be a scheduling call.

Florida courts have held that a trial court violates due process when it decides the merits of a controversy at a proceeding noticed only for a procedural or limited purpose. In *Schneider v. Tirikian*, 397 So. 3d 1070 (Fla. 3d DCA 2024), the Third District reversed a default judgment entered after a trial court provided minimal notice of a calendar call and then proceeded to adjudicate the merits, the court explained that "adequate notice is a fundamental element of the right to due process" and that parties cannot be deemed to have waived rights when "they had no advance notice that the merits would be adjudicated." *Id*. at 1073–74 (quotation marks omitted). In *Saint-Vil v. Perimeter Mortg. Funding Corp.*, 206 So. 3d 7, 11–12 (Fla.

4th DCA 2016), the Fourth District similarly reversed a default judgment where the party lacked meaningful notice of the dispositive hearing. The same principle applies more forcefully here because Talentscale had no notice at all that the May 23 conference would resolve ownership of the Cleveland Clinic receivable, much less that the court would make dispositive factual findings based on unsworn argument while discovery remained incomplete.

The prejudice from this lack of notice was concrete and dispositive. Talentscale had subpoenaed Cogent for loan ledgers, amortization tables, and Blocked Account statements in February 2025, and by May 21, 2025, had been forced to move to compel because Cogent had not produced the very records needed to test Cogent's claims of default and priority. Cogent then filed a new affidavit and 154 pages of invoices on May 21, 2025, the day Talentscale's shortened response was due, without providing the underlying accounting that would show whether Aery was current or delinquent. Talentscale responded the next day with a motion to compel, and the court set a hearing only on Talentscale's request for more time. By converting that conference into an unannounced merits hearing and dissolving the writ, the court deprived Talentscale of the chance to review key documents, prepare witnesses, or marshal evidence in support of its statutory and constitutional defenses.

In the analogous summary judgment context, the Supreme Court has held that it is inappropriate to resolve a case "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). That is precisely what occurred here, as the court ruled while Talentscale's motion to compel the very loan records at issue remained pending. Under *Mathews v. Eldridge*, the constitutional adequacy of procedures turns on (1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the government's interest and administrative burden. 424 U.S. at 335. All three factors favor Talentscale. The private interest is massive: the writ captured 81% of Talentscale's unpaid judgment. The risk of erroneous deprivation was high because the court acted on incomplete information and unsworn assertions later disproved by Cogent's own ledgers, while declining to rule on a motion to compel the very evidence that would have corrected the record. And the marginal burden of providing modest additional process, a short extension, a noticed evidentiary hearing, and a jury trial when required by statute, was slight compared to the harm of permanently releasing the funds.

The district court addressed the lack of notice in its July 1 order by pointing to the fact that all parties "had an hour-long hearing" and were allowed to "be heard" on the dissolution issue. But as the Supreme Court explained in *Armstrong v. Manzo*,

a later opportunity to speak does not cure a due process violation where the defective procedure has already altered the party's position and deprived it of the meaningful opportunity to be heard at the outset. 380 U.S. at 551–52. Here, by the time Talentscale learned that the May 23 conference would decide the fate of the Cleveland Clinic funds, the hearing was underway, discovery remained incomplete, and Talentscale had no realistic ability to assemble and present evidence. Only vacating the May 23 order and starting over with proper notice and procedures could "wipe the slate clean." *Id*. at 552.

Further, Florida's appellate courts have recently emphasized that denial of notice and an opportunity to be heard constitutes "fundamental error" requiring reversal regardless of harmlessness analysis. In *Navy Federal Credit Union v. Camden Summit Partnership, LP*, 406 So. 3d 964, 966–67 (Fla. 4th DCA 2025), the Fourth District reversed a trial court's dissolution of a writ of garnishment where the court had entered a dispositive order without providing meaningful notice of the hearing's purpose, holding that "lack of notice and an opportunity to be heard is fundamental error."

### B. Florida Statutes §§ 77.07 and 77.16 Required an Evidentiary Hearing and Jury Trial that Never Occurred.

Separate and apart from constitutional due process, Florida's garnishment statutes imposed specific procedural obligations that the district court did not follow. Section 77.07(1) provides that when a defendant moves to dissolve a writ of

garnishment, "the court shall set down such motion for an immediate hearing." Florida courts have construed this to require a trial-type adjudication of the issues raised by the motion. See *Merriman*, 123 So. 3d at 1193 (garnishment dissolution "requires a trial of the issues"); *Harborside Suites, LLC v. Rosen*, 261 So. 3d 664, 666 (Fla. 3d DCA 2018). Similarly, § 77.16(1) provides that when a third party like Cogent claims an adverse interest in the garnished property and files the required affidavit, "the court shall impanel a jury to determine the right of property between the claimant and plaintiff unless a jury is waived."

Neither requirement was satisfied here. The May 23 conference was explicitly noticed as a "non-evidentiary hearing" on Talentscale's motion for extension of time. No witness was sworn, no exhibits were admitted, and no one was told that the proceeding would substitute for the "immediate hearing" § 77.07 mandates or the jury trial § 77.16 commands. Yet the court treated the telephonic conference as though it were a fully developed bench trial, making dispositive factual findings about Cogent's supposed ownership and Aery's alleged default, and then dissolving the writ from the bench.

Florida courts have made clear that a trial court may not resolve contested issues of ownership in a garnishment proceeding on affidavits and argument alone. In *Green v. Williams*, the Fifth District held that a third-party claimant must "establish, through sufficient allegations made under oath and proved in

24

an *evidentiary hearing*, that the money in the account is his." 78 So. 3d 555, 558 (Fla. 5th DCA 2011) (emphasis added). That requirement flows from the "basic principle of garnishment law that property which is not actually and in 'good conscience' owned by the debtor may not be secured by a judgment creditor," coupled with the statutory command that title disputes be tried to a jury unless waived. *Id.* at 557. Here, there was no evidentiary hearing. Cogent's affiant was never put under oath or made available for cross-examination, and the court did not test the bank's assertions with the later-produced ledgers showing $5.9 million in March-April payments and $6.3 million in post-lien advances. Instead, the court credited unsworn statements from Cogent's counsel about supposed delinquencies and drew legal conclusions about "assignment" and priority without the procedural safeguards §§ 77.07 and 77.16 require.

Section 77.16's jury mandate is especially important here because Cogent's third-party claim squarely placed ownership of the Cleveland Clinic funds at issue. Cogent filed an affidavit claiming an interest adverse to Aery and Talentscale in the receivable, triggering the statutory requirement that "the court shall impanel a jury" to determine "the right of property between the claimant and plaintiff unless a jury is waived." Florida courts construe § 77.16's jury-trial mandate as mandatory, not discretionary. In *RPS, Inc. v. Travel Max International, Inc.*, 823 So. 2d 243, 244–45 (Fla. 4th DCA 2002), the Fourth District held that when a garnishor timely

demands a jury on the third-party ownership issue, "the statutes require the judge to empanel a jury to try the issue of ownership of the property sought to be garnished," and reversed a dissolution order where the court failed to do so. That case reversed a dissolution order for failure to empanel a jury, making it highly relevant precedent directly on point. See *id*.

No jury was impaneled here, no voir dire occurred, and Talentscale was never given a meaningful chance to demand a jury before the court announced that it was deciding the merits at what had been noticed as a scheduling call. Talentscale expressly disputed Cogent's ownership and triggered § 77.16's protections, yet the court resolved ownership based solely on attorney argument and insufficient affidavits, without empaneling a jury or even holding the antecedent evidentiary hearing that *Green* requires.

In denying Rule 60 relief, the district court suggested that Talentscale waived its jury and hearing rights by failing to invoke them during the May 23 conference. But waiver under Florida law requires a "voluntary and intentional relinquishment of a known right." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 n.12 (Fla. 2001). A party cannot intentionally relinquish rights it has no reason to know are at stake. See *Schneider*, 397 So. 3d at 1074 (holding no waiver where party "had no advance notice that the merits would be adjudicated"). Talentscale came prepared to argue for an extension and it was never told that the court would treat the

conference as a substitute for the statutorily mandated evidentiary hearing and jury trial, much less that by participating it would forfeit those rights.

### C. *Charlotte Development Partners* is Distinguishable.

The trial court's reliance on *Charlotte Development Partners, LLC v. Tricom Pictures & Productions, Inc.*, 33 So. 3d 690 (Fla. 4th DCA 2009), is misplaced. In *Charlotte Development*, the circuit court held a hearing specifically noticed "on the motions to intervene and to determine priority of claims." *Id.* at 692. The court "granted the motion to intervene and said, '[N]ow we are going to get to the merits.'" *Id.* A witness testified, was examined and cross-examined, and the court invited argument "on who is entitled to the $10,000." *Id.* Only after an hour of full participation in a properly noticed merits hearing did the party attempt to invoke its jury rights, at which point the court found waiver because the party had "jumped at the court's invitation to expeditiously resolve the case on the merits" and only "fell back on section 77.16 to extricate itself from an unfavorable decision" when "it perceived that its case was proceeding poorly." *Id.* at 693.

Here, the procedural posture is entirely different. The May 23, 2025 hearing was noticed only for "Plaintiff's motion for extension of time (Doc. 78)." Talentscale did not receive notice that the merits of Cogent's dissolution motion would be adjudicated. Unlike in *Charlotte Development*, where the parties knowingly proceeded to the merits of a properly noticed hearing, Talentscale attended what was

ostensibly a scheduling conference. One cannot "dip [one's] toe into a non-jury trial," *Charlotte Dev. Partners*, 33 So. 3d at 693, when one has no notice that a trial is occurring. The *Charlotte Development* rule presupposes that a party has been afforded the opportunity to invoke its rights at a properly noticed hearing—the very opportunity Talentscale was denied. Unlike *Charlotte Development*, where the party participated in a properly noticed merits hearing and only invoked § 77.16 after "jump[ing] at the court's invitation to expeditiously resolve the case on the merits," *RPS* and *Navy Federal* treat the denial of notice and meaningful opportunity to be heard as reversible, not waivable, error.

**D. The Trial Court Relied on an Outdated Statutory Interpretation.**

In denying reconsideration, the trial court relied on two cases from 1965 to support the proposition that a court can enter a "summary ruling" on title to garnished property if warranted by the facts. Specifically, the court cited *Oper v. Air Control Products, Inc. of Miami*, 174 So. 2d 561, 564 (Fla. 3d DCA 1965), and *Tortuga Marine Salvage Co. v. Hartford Accident and Indemnity Co.*, 171 So. 2d 54 (Fla. 3d DCA 1965).

These cases interpreted a version of the statute that was materially different from the current § 77.16. The former version of the statute read: "Claims by third persons to garnisheed property. If any person other than the defendant shall claim that the indebtedness due by a garnishee is due to him and not to the defendant, or

28

shall claim the effects in the hands or possession of any garnishee, and shall make affidavit that the said indebtedness or effects are bona fide his property, the court shall immediately, unless good cause be shown to the contrary, and without the formality of pleading, direct a jury to be empaneled to inquire of the right of such property between the claimant and the plaintiff." (emphasis added) *Oper*, 174 So. 2d at 563 n.2.

Two years after both cited rulings, in 1967, the Legislature removed the critical "unless good cause be shown to the contrary" language. The current version reads: "If any person other than defendant claims that the debt due by a garnishee is due to that person and not to defendant, or that the property in the hands or possession of any garnishee is that person's property and shall make an affidavit to the effect, the court shall impanel a jury to determine the right of property between the claimant and plaintiff unless a jury is waived." Fla. Stat. § 77.16(1). The current statute also makes no "good cause" exception for jury trial. *Id.* By removing the "unless good cause be shown to the contrary" proviso, the Legislature eliminated the very textual hook *Oper* and *Tortuga* relied on to permit "summary rulings" on title; whatever limited flexibility existed under the pre-1967 statute no longer survives under current § 77.16's categorical "shall impanel a jury" language. The trial court's reliance on 1965 cases interpreting a superseded statutory framework is reversible error.

**E. Cases Permitting Summary Disposition Are Inapposite Due to Fundamental Procedural Differences.**

Courts may resolve garnishment disputes without a jury only where no genuine issue of material fact exists. *Physicians Care Ctrs. of Fla., LLC v. PNC Bank, N.A.*, 345 So. 3d 907, 911 (Fla. 4th DCA 2022). However, each case Cogent cites for the proposition that summary disposition is permissible contains proper procedural safeguards, typically a noticed motion for summary judgment, that provide an opportunity for parties to properly contest whether facts are genuinely disputed. Talentscale received none of those protections.

In *Tortuga Marine Salvage Co. v. Hartford Accident & Indemnity Co.*, 171 So. 2d 54 (Fla. 3d DCA 1965), the court affirmed a summary ruling only after prior proceedings had established the facts so clearly that no reasonable dispute existed. *Id.* at 55. In *Oper v. Air Control Products, Inc.*, 174 So. 2d 561 (Fla. 3d DCA 1965), the court noted that "[t]he material facts in this cause were admitted," leaving only legal questions of priority. *Id.* at 564. In *Physicians Care*, the Fourth DCA applied summary judgment only after finding the documentary evidence "blatantly contradicted" the appellant's position "so that no reasonable jury could believe it." 345 So. 3d at 911.

The federal cases Cogent cites follow the same pattern. In *Tempur-Pedic N. Am. v. Sos Furniture Co.*, No. 20-MC-22441, 2021 U.S. Dist. LEXIS 44422, at *8–9 (S.D. Fla. Mar. 8, 2021), the court held that "if there is no genuine issue of material

fact a trial is not necessary" under § 77.16, but reached that conclusion on a noticed motion for summary judgment. In *Highland Consulting Group, Inc. v. Soule*, No. 9:19-cv-81636, 2022 U.S. Dist. LEXIS 221566, at *19–20 (S.D. Fla. Dec. 7, 2022), the claimant explicitly objected that "it is procedurally improper to resolve this dispute on a motion for summary judgment." The court rejected that argument, not because summary judgment procedures were flawed but because the substance of the dispute was unfounded.

Thus, the only Florida and federal decisions allowing merits resolution without a jury—*Tortuga*, *Oper*, *Physicians Care*, *Tempur-Pedic*, and *Highland Consulting*—all involved a noticed dispositive motion, full briefing, and an undisputed or documentary record that eliminated genuine fact disputes. Those procedural safeguards were entirely absent here. Cogent obtained what no garnishment defendant or third-party claimant should ever obtain: a merits ruling at an unannounced, non-evidentiary conference, while discovery was incomplete and without the safeguards Florida's garnishment statutes mandate.

Because the district court dissolved the writ and discharged the garnishee at a proceeding that did not satisfy either due process or Florida's statutory requirements, the May 23 order must be reversed and the garnishment reinstated for proper hearing and jury trial.

**II.  COGENT DID NOT MEET § 77.16'S OWNERSHIP REQUIREMENT AND CANNOT RELY ON A BLOCKED ACCOUNT OR SECURITY INTEREST AS A SUBSTITUTE.**

Even if the May 23 procedure were sound, Cogent's § 77.16 claim fails on the face of its own affidavits and the garnishee's answers. Florida Statutes § 77.16(1) allows a third party to claim garnished property only if it files an affidavit stating that "the debt due by a garnishee is due to that person and not to the defendant," or that the property in the garnishee's possession "is that person's property." Florida courts strictly construe garnishment statutes and require exact compliance with their terms. See *Gigliotti*, 788 So. 2d at 1016.

**A. Cogent's Affidavits Admit the Debt is Owed to Aery, Not Cogent.**

Cogent never alleged, much less proved, that Cleveland Clinic's debt was "due to" Cogent. Its May 14, 2025 affidavit describes the "Cleveland Clinic Receivables" as "amounts that the Cleveland Clinic owes Aery" and characterizes those receivables as collateral for Cogent's loans. Cogent's May 21 supplemental affidavit repeats that the "Additional Cleveland Clinic Receivables…are amounts that the Cleveland Clinic owes Aery." Neither affidavit states that Cleveland Clinic owes money to Cogent, that Cogent has become the creditor on the account, or that the receivable itself is Cogent's property.

Cleveland Clinic's answers are consistent. Both the April 24 and May 15 answers identify Cleveland Clinic as "indebted to Aery Aviation, LLC" and make no

mention of Cogent as creditor or assignee. The invoices Cleveland Clinic received from Aery show Aery as payee and direct payment to Aery's designated accounts, not to Cogent. Those documents confirm that, as between Cleveland Clinic and Aery, Aery remained the party entitled to payment.

Under § 77.16(1), that is the end of the inquiry. The statute grants standing to move to dissolve a writ to the defendant and to "any other person" who claims the debt is due to that person and not to the defendant. Fla. Stat. § 77.16(1). Florida courts have enforced this limitation, holding that a third party who cannot truthfully allege that the garnished debt is owed to it lacks the statutory predicate for relief. See *Navon, Kopelman & O'Donnell, P.A. v. Synnex Info. Tech., Inc.*, 720 So. 2d 1167, 1168 (Fla. 4th DCA 1998).

Here, Cogent's affidavits never crossed that threshold. They describe Cogent as a secured lender with a perfected security interest in Aery's receivables and a blocked-account arrangement to control cash flow, but they concede that Cleveland Clinic's payment obligation runs to Aery. The Eleventh Circuit has made clear that "a security interest is not a promise to pay a debt." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012). A security interest is a lien, not ownership. U.C.C. § 1-201(b)(35). Because Cogent did not allege that Cleveland Clinic's debt was "due to" Cogent within the meaning of § 77.16(1), its motion to dissolve should have failed on the face of its affine papers.

Florida courts recognize the critical distinction between a lien and ownership. In *Bender v. Shatz*, 300 So. 3d 193, 197–99 (Fla. 4th DCA 2020), Judge Warner's special concurrence emphasizes that a third-party claimant under § 77.16 bears the burden to prove an "ownership interest," not merely a lien. Likewise, *American Alternative Insurance Corp. v. South Florida Glazing, Inc.*, 904 So. 2d 656, 657–58 (Fla. 4th DCA 2005), affirmed dissolution of the garnishment only where the note was actually in default, implicitly recognizing that a secured creditor's rights vis-à-vis a garnishor turn on enforcement of the debt, not mere existence of a security interest. Cogent never declared default before the dissolution hearing, its affiants admitted "the Cleveland Clinic owes Aery," and it continued extending millions in new credit after the writ issued. Indeed, Aery's credit limit was increased from $15 million to $18 million during the pendency of the garnishment. Those facts fall far short of the "ownership interest" *Bender* contemplates and cannot satisfy § 77.16's requirement that the garnished "debt due by a garnishee is due to [the claimant] and not to the defendant."

### B. A Blocked Account and Control Over Proceeds Are Not an "Assignment" of the Receivable.

Faced with affidavits and answers that uniformly identify Aery as Cleveland Clinic's creditor, the district court supplied its own theory: that the garnished funds had been "assigned" to Cogent and therefore no longer belonged to Aery. But no party alleged an assignment, no contract in the record contains assignment language

directed to Cleveland Clinic's debt, and the conduct of the parties confirms that Cleveland Clinic continued to owe payment to Aery.

Under Florida law, an assignment of a receivable requires a clear manifestation of the assignor's intent to transfer its present rights to the assignee and to divest itself of control. See *Dick Warner Cargo Handling Corp. v. Aetna Bus. Credit, Inc.*, 746 F.2d 126, 130–31 (2d Cir. 1984) (applying Florida law). A security interest, even one that requires a borrower to deposit proceeds into a blocked account, is not an assignment of the underlying debt absent such clear intent.

The loan documents Cogent filed show that Aery granted Cogent a security interest in "all accounts receivable," agreed to maintain a minimum balance in a blocked account, and directed certain customers to remit payments into that account. But they do not purport to substitute Cogent as Cleveland Clinic's creditor, and they do not authorize Cleveland Clinic to treat Cogent as the payee in place of Aery. As Cleveland Clinic's internal emails reflect, when Aery's CFO asked to change the bank account into which Cleveland Clinic remitted payments, Cleveland Clinic treated the change as nothing more than updated ACH instructions for Aery, not as notice that it now owed money to Cogent.

Florida courts distinguish sharply between an assignment of a receivable and a mere agreement to route payments through a particular account. In *Giles v. Sun Bank, N.A.*, 450 So. 2d 258, 260 (Fla. 5th DCA 1984), the court explained that "the

true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming as assignee." Cleveland Clinic's invoices here directed payment to Aery, and Cleveland Clinic twice answered that it owed the debt to Aery, not to Cogent—so Cleveland Clinic would not have been justified in paying Cogent instead.

*Health Application Systems, Inc. v. Hartford Life & Accident Insurance Co.* is to the same effect: "[a] mere agreement to pay a debt out of a designated fund does not operate as a legal or equitable assignment, since the assignor retains control over the subject matter." 381 So. 2d 294, 297 (Fla. 1st DCA 1980). A valid assignment requires "an intent to assign a present right in the subject matter of the assignment, divesting the assignor of all control." *In re Armando Gerstel,* 65 B.R. 603, 605 (Bankr. S.D. Fla. 1986). The blocked-account arrangement here, which left Aery as invoice addressee and account debtor of Cleveland Clinic while Cogent continued to adjust the credit facility at will, is exactly the sort of retained-control financing structure that *Health Application* and *Gerstel* say does not create an assignment.

The district court's reliance on "assignment" cases decided under a prior version of § 77.16 does not cure this gap. *Oper* and *Tortuga* predate the 1967 amendment that removed the "unless good cause be shown to the contrary" language and replaced it with today's mandatory jury requirement, and they involved records where the assignment and priority were either undisputed or established through

prior proceedings. Here, by contrast, ownership was vigorously disputed, the documents show only a security interest and blocked account, and no one asked the court to treat the receivable as assigned.

The point is not formalism. Treating Cogent as the "owner" of Cleveland Clinic's debt based solely on its security interest allowed the court to bypass both § 77.16's affidavit requirement and its jury mandate. If every secured lender with a blocked account could be deemed the owner of all receivables, § 77.16's textual protection for judgment creditors would be nullified in precisely the cases where it matters most.

### C. The Court Compounded the Error by Relying on Unsworn Argument to Resolve Disputed Facts.

The ownership question was not only inadequately pled, it was resolved on an improper record. As Florida courts have long held, "[s]tatements of counsel are not evidence" and cannot support factual findings. *Leon Shaffer Golnick Advert., Inc. v. Cedar*, 423 So. 2d 1015, 1017 (Fla. 4th DCA 1982); see *Rowe v. Rodriguez–Schmidt*, 89 So. 3d 1101, 1103 (Fla. 2d DCA 2012). When facts are contested, they must be established through sworn testimony or properly admitted exhibits, not through lawyers' unsworn representations.

At the May 23 hearing, Cogent's counsel told the court that her client had "informed [her]" that "as of April, 2025, Aery was 30 days past due on their loan payments for all three of the facilities," and that she was "guessing that March

payment has not been made." No witness was sworn to attest to those facts, no payment register was introduced into evidence, and Talentscale had none of the ledgers it had sought through discovery. The court nevertheless stated that it "underst[ood] and accept[ed]" this representation (later shown to be inaccurate) and expressly relied on it in evaluating whether further discovery was necessary and whether Cogent's claim should prevail.

Five days later, Cogent produced the actual ledgers. They show that in March and April 2025 Aery made 42 payments totaling $5,923,136.08 to Cogent, including more than $3 million in principal payments in March alone. Aery was not months behind; it was making massive payments far in excess of the $176,232.18 interest figure in the March statement. If anything, those records suggest that Cogent was aggressively sweeping Aery's receivables, including the Cleveland Clinic funds, to pay down its own exposure while opposing Talentscale's enforcement efforts.

Because ownership and default were resolved based on unsworn argument later shown to be inaccurate, the dissolution order rests on an evidentiary void that Florida law does not tolerate. *Green* requires that a third-party claimant's alleged entitlement be "proved in an evidentiary hearing," not assumed based on counsel's say-so. 78 So. 3d at 558. The court's willingness to treat argument as evidence underscores why the lack of proper procedure was not harmless, as it led directly to factual findings that a jury could, and likely would, view differently on a full record.

**III.    THE COURT MISAPPLIED SECURED TRANSACTIONS LAW, IGNORED § 679.323(2), AND ABUSED ITS DISCRETION IN DENYING RULE 59(E)/60(B) RELIEF.**

The dissolution order also rests on a mistaken view of secured-transactions law and an omission of § 679.323(2)'s limits on post-lien advances. Those legal errors were compounded when the court refused to reopen the judgment even after the missing loan records came to light, warranting reversal and remand.

**A. A Perfected Security Interest Does Not Automatically Defeat a Judgment Lien Absent Default and Enforcement.**

The district court treated Cogent's perfected security interest as if it were absolute ownership, holding that Cogent's interest "had priority" over Talentscale's lien and that this "dispositive" fact rendered all other issues immaterial. That approach collapses the distinction between a security interest and title, and it disregards Florida authority recognizing that a secured creditor must demonstrate a present right to specific property before displacing a judgment creditor.

Courts applying Florida law have consistently refused to award blanket priority to a secured creditor absent proof of default or enforcement action. In *American Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 84 F. Supp. 3d 1314, 1323–24 (M.D. Fla. 2015), a secured lender claiming priority over a garnishor needed to show a default triggering enforcement rights before it could defeat the garnishment. Likewise, *Dick Warner*, applying Florida law, emphasized that control

39

over proceeds and security in receivables do not by themselves transfer ownership or eliminate competing claims absent a clear assignment. 746 F.2d at 130–31.

Here, Cogent never declared Aery in default prior to the dissolution order. At the hearing, Cogent's counsel conceded that although Aery was not maintaining the $500,000 blocked-account balance, she did not believe Cogent had notified Aery it was in breach. The loan documents Cogent attached to its motion show scheduled interest obligations and separate principal amortization for aircraft "sub-notes," but no default notices were offered and no enforcement action, such as acceleration or foreclosure, was documented. The later-produced ledgers, showing millions of dollars in payments in March and April, further undermine any suggestion that Aery was in default on the main facility at the time of the hearing.

By granting Cogent blanket priority without requiring proof of default or enforcement, the district court effectively rewrote Florida's secured-transactions statutory scheme to treat security interests as ownership interests. That mistake of law independently justifies reversing the dissolution order and, at a minimum, requires a remand for proper application of Florida law to the actual loan history.

### B. The Court Ignored § 679.323(2) and Cogent's $6.3 Million in Post-Lien Advances.

Even if Cogent's security interest gave it some priority, it does not follow that Cogent's interest was superior to Talentscale's judgment lien for all purposes. Florida Statutes § 679.323(2) provides that, with limited exceptions, a security

interest is subordinate to the rights of a lien creditor "to the extent that the security interest secures an advance made more than 45 days after the person becomes a lien creditor," if the secured party had knowledge of the lien and the advance was not made pursuant to a prior commitment.

The Eleventh Circuit has recognized that garnishment creates a lien that competes with Article 9 security interests. In *Henry Lee Co. v. Tolz*, 157 F.3d 1290, 1294–96 (11th Cir. 1998), this Court held that a garnishor's lien under Florida law must be analyzed within the UCC priority framework, and that a secured creditor's rights are not absolute as against judicial lien creditors. Section 679.323(2) codifies that competition by subordinating a secured party's future advances made with knowledge of an intervening lien.

Other courts have refused to allow a secured creditor to sit on its enforcement rights while using its lien to block other creditors. The Eighth Circuit, for example, held that a secured creditor "cannot refuse to exercise its rights under the security agreement, thereby maintaining [the debtor] as a going concern, while it impairs the status of other creditors by preventing them from exercising valid liens." *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302, 305 (8th Cir. 1989). Cogent did exactly that—refusing to declare default, expanding Aery's credit line after the writ, and advancing over $6.3 million with actual notice of Talentscale's garnishment— conduct § 679.323(2) places behind Talentscale's earlier-arising lien.

The key dates are undisputed. Talentscale became a lien creditor on March 31, 2025, when Cleveland Clinic was served with the writ of garnishment. Cogent had actual notice of the writ and Talentscale's enforcement efforts well before that date, having been garnished itself and subpoenaed for records. Between March 31 and May 21, 2025, Cogent advanced Aery $6,336,853.46 in new credit while simultaneously executing an Amended and Restated Business Loan Agreement and a new $18,000,000 note that expanded the line from $15 million to $18 million. These post-lien advances far exceeded Talentscale's $1.14 million judgment and were made with full knowledge of the garnishment.

Under § 679.323(2), Cogent's security interest is subordinate to Talentscale's lien "to the extent" it secures those post-lien advances. The statute's 45-day grace period had not yet expired by May 21, but Cogent's advances continued beyond that window and, at minimum, raise complex allocation questions that cannot be resolved by simply declaring Cogent the owner of all receivables. The district court's orders, however, are silent on § 679.323(2); they make no effort to parse which portion of Cogent's claim relates to pre-lien collateral and which portion relates to post-lien advances that should be subordinated.

At a minimum, the existence of more than $6.3 million in post-lien advances, five times Talentscale's judgment, warrants a remand for a proper § 679.323(2) analysis. On this record, it is entirely possible that, after allocating the Cleveland

Clinic receivable between pre- and post-lien credit, Talentscale's lien should be satisfied in full from the garnished funds before any residue is applied to Cogent's subordinated advances.

**C. The Denial of Rule 59(E)/60(B) Relief Was an Abuse of Discretion.**

Talentscale's Rule 59(e)/60(b) motion asked the district court to correct precisely these legal errors and to reconsider its factual findings in light of the newly produced loan records. The court refused, reiterating that the "dispositive" fact of an assignment remained "undisputed" and suggesting that any procedural defects were cured by the opportunity to argue at the May 23 hearing. That refusal was an abuse of discretion.

First, the motion identified a clear "mistake" of law within Rule 60(b)(1) as clarified in *Kemp*: the court treated a security interest and blocked-account arrangement as an assignment conferring ownership, ignored § 77.16's affidavit and jury requirements, and failed to apply § 679.323(2) to Cogent's post-lien advances. Those are not discretionary fact-weighing errors; they are legal missteps that directly controlled the outcome, and under *Kemp* they are precisely the sort of "judicial mistake" Rule 60(b)(1) is meant to address.

Second, the motion presented "newly discovered evidence" that could not, despite diligence, have been presented before the May 23 order. Talentscale served subpoenas on Cogent in February, engaged in repeated meet-and-confer efforts, and

moved to compel when Cogent withheld key records. Yet Cogent did not produce the ledgers and Blocked Account statements until after the dissolution order. Those records are not cumulative, they refute the central factual premise on which the court relied, counsel's unsworn assertion that Aery was "30 days past due" and had not made its March payment, and they reveal material facts about the $6.3 million in post-lien advances that were never disclosed. They easily satisfy the five-factor test this Court applies to Rule 60(b)(2) motions. See *In re Global Energies, LLC*, 763 F.3d 1341, 1347 (11th Cir. 2014).

Third, the combination of a due process violation, statutory non-compliance, and a factual record skewed by later-disproved assertions rises to the level of "extraordinary circumstances" under Rule 60(b)(6). This is not a case where a losing party merely seeks a second bite at the apple. Talentscale lost the ability to collect 81% of its judgment at an unannounced merits hearing, based on unsworn argument that subsequent ledgers exposed as wrong, and under a legal framework that treated a lender's security interest as absolute ownership while ignoring statutory limits on post-lien advances. Denying relief in those circumstances makes the error permanent and rewards a procedural path that other litigants will be tempted to follow.

Rule 59(e) exists to allow a court to correct clear errors of law and prevent manifest injustice and Rule 60(b) exists to reopen judgments infected by legal mistakes and fundamental unfairness. Both descriptions fit this case. By refusing to

revisit the May 23 order after the full record came to light, the district court abused its discretion.

**<u>CONCLUSION</u>**

The district court dissolved a $921,471.42 writ of garnishment and discharged the garnishee at a telephonic conference noticed only for a scheduling matter, without an evidentiary hearing, without a jury, and without the critical loan records that later proved key factual representations wrong. It did so on the basis of a legal theory, "assignment," that no party pled and that the documents do not support, while ignoring Florida statutes that strictly limit when a third-party claimant may defeat a judgment creditor and subordinate post-lien advances.

The Court should reverse the May 23, 2025 order dissolving the writ of garnishment and the July 1, 2025 order denying Talentscale's Rule 59(e)/60(b) motion, reinstate the writ as to Cleveland Clinic, and remand with instructions to (1) hold the evidentiary hearing § 77.07 requires on Aery's motion to dissolve, (2) impanel the jury § 77.16 mandates to determine the right of property between Talentscale and Cogent, and (3) apply Florida's secured-transactions law, including § 679.323(2), to allocate the Cleveland Clinic receivable in light of Cogent's post-lien advances.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

*/s/ Kenneth E. Chase*
Kenneth E. Chase
Florida Bar No. 17661
kchase@chaselaw.com
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Counsel for Plaintiff /Appellant*
*Judgment-Creditor Talentscale, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that this Initial Brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 10,910 words.

By:   */s/ Kenneth E. Chase*
      Kenneth E. Chase

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on January 7, 2026 which automatically sends notice to all counsel or parties of record.

By:   */s/ Kenneth E. Chase*
      Kenneth E. Chase